OPINION OF THE COURT
Elaine Slobod, J.
This is a PINS proceeding brought by the principal of the Memorial Elementary School against respondent, Ruffel P., who was 8/2 years old when this matter was commenced.
The petition alleges that respondent "has had several acts of violent behavior during the school year since September. Several techniques have been used to try to change his behavior with no success. Parents have also exhausted any form of help, they have no control over him.”
The Law Guardian moved by notice of motion to dismiss the instant petition since the school district had "failed to exhaust its administrative remedies” and "in the interests of justice”. By orders dated October 30 and November 21, 1991 the respondent’s motion to dismiss was continued by the court, on its own motion until the district’s Committee on Special Education (CSE) could complete a second evaluation of the respondent. In its initial evaluation on November 29, 1990, the CSE determined that respondent should not be classified under the criteria of 8 NYCRR part 200.
On November 4, 1991 the CSE again concluded that respondent could not be classified as there was "insufficient evidence of a handicapping condition that adversely affects academic progress”. The CSE based its conclusion on a series of reports and evaluations which had indicated that the respondent is unquestionably aggressive and immature; has attention problems; is highly disruptive in a normal classroom setting; but, nevertheless, was succeeding academically at a level commensurate with his intellectual ability.
Thus, while respondent’s conduct demonstrated significant emotional and control problems, the CSE declined to classify respondent as a "handicapped” student or "unable to learn” or as a child who was otherwise in need of any special *704 educational assistance. (Education Law § 4403; 8 NYCRR part 200.)
The basis of the first thrust of the Law Guardian’s motion to dismiss (failure to exhaust administrative remedies) is the alleged failure of the district to seriously attempt to place the respondent into some handicapped classification, and thus provide an alternative education mode such as BOCES, resource room or some other special program, before commencing a PINS proceeding.
This court is inclined to concur with the Law Guardian that some other approach short of a PINS petition should have been explored before a nine-year-old child is subjected to a Family Court proceeding. However, the Family Court is not empowered to directly review as the Law Guardian would like, the administrative decisions of the petitioning school district. The failure of the district’s CSE to classify the respondent is itself subject to administrative review by the State Commissioner of Education (Education Law § 4404 [2]) whose decision is in turn subject to direct review only in the Supreme Court in a CPLR article 78 proceeding. (Education Law § 4404 [3].)
Therefore, since this court is without jurisdiction to review the decision of the district CSE, it is constrained to deny the Law Guardian’s motion to the extent that it seeks dismissal on that ground.
The Law Guardian’s second basis for dismissal is founded on "the interests of justice”.
While the provisions of article 7 of the enactment do not appear to contain such a ground for dismissal, it is within the inherent authority of the court to dismiss "in the interests of justice”. Authority for dismissal on this ground is also implied under article 7 since the Legislature provided for such a basis for dismissal when it addressed the much more serious conduct of juvenile delinquents under the provisions of Family Court Act § 315.2.
The petition alleges that respondent has had several acts of violent behavior. Several techniques have been used to try to change his behavior, with no success.
By its own admission, the school has merely used different discipline techniques on this nine-year-old child. It held teacher conferences with respondent, revoked various privileges, gave him after-school suspension, held telephone and face-to-face conferences between respondent’s parents and *705 teachers, removed him from class, reprimanded him, held meetings with the school’s instructional leaders, gave respondent in-school suspension and referred him to the principal. At no time before the filing of the within petition does it appear that the school ever dealt with respondent’s problems from something other than a disciplinary approach. At no time did the school try a different teaching approach. In the court-ordered evaluation by McQuade Children’s Services, it was reported that respondent "is a child who appears to adhere to the home situation quite well, but in an unstructured and more open setting such as school, he is unable to cope with the stresses and demands placed on him.” The school has refused to place respondent in a structured class setting such as one suggested by the Law Guardian. The school simply claims respondent does not qualify for such placement because his emotional problems do not in the final analysis interfere with his learning.
As evidence that respondent’s emotional problems do not interfere with his ability to learn, petitioner cites respondent’s good grades. However, in the progress report for 1990-1991 included in petitioner’s opposition papers, respondent’s teacher writes under teacher’s comments for the 3rd and 4th marking periods respectively "Ruffel can work well, but his attitude and behavior usually prevent his doing so;” and "Ruffel is very capable but until his behavior is under control, he will not work up to his potential.” It appears that in the real world of the classroom respondent’s teacher differs from the school psychologist as to whether respondent’s problems in fact interfere with his ability to learn.
In addition to respondent’s good grades, petitioner cites respondent’s respectable scores on his Metropolitan achievement tests. Petitioner fails to account for respondent’s drop in scores on the Wechsler Intelligence Scale for Children. On October 10, 1990, respondent scored a verbal IQ of 96 and scored a performance IQ of 93, without significant scatter among the subtest scores. Just eight months later, on June 13, 1991, respondent’s verbal IQ dropped to 88 and his performance IQ dropped to 86. At that time Dr. Yagoda reported that an analysis of the subtest scatter suggests capabilities ranging into the mid-average range.
The court can only conclude from the testing results of respondent that professionals can interpret the results in different ways and thus draw different conclusions. Clearly, the school has chosen to interpret the results as barring the *706 respondent from being classified by its CSE. While this court has no power to directly review the school’s procedures and decision in this area, it is not bound to accept the school’s decision without question. The mandate of the Family Court is to act in the best interest of the child when exercising its role as "parens patriae”.
To declare this child a PINS under the circumstances presented would inevitably doom him to placement. While the school suggests that the court has the option of placing respondent on probation, in this instance, probation would be futile. As long as the school refuses to place him in a setting where he can succeed behaviorally as well as academically, probation would place respondent in an untenable situation. It would only be a matter of time until respondent would be before this court on a violation petition which could precipitate placement.
The court realizes that if respondent is not found to be a PINS, he will in all likelihood receive home tutoring. This court finds that preferable to entertaining a court proceeding which would inevitably lead to placing this young child. It is this court’s belief that only in extraordinary circumstances should a child be so placed. As long as his parents can handle him at home, and there is an academic setting in which this child can learn without posing a threat to others, respondent should remain home.
Respondent is merely nine years old. He is in need of services both at school and at home. With home tutoring and counselling for himself and his parents, respondent may be able to reenter the classroom in the future. That future could be a lot sooner if the school recognized its responsibility to place respondent in the least restrictive learning environment.
It appears that the respondent’s conduct is the result of some emotional handicap, parental neglect, the parents’ inability to adjust to significant cultural differences or a combination of all of these elements.
During the course of this proceeding, the court ordered a neglect investigation of respondent’s parents. A report was issued by the Department of Social Services indicating that respondent’s parents appeared to be fulfilling their commitment to him and finding that there was no neglect by his parents. The report further indicated that counselling with assistance of the attendance officer may prevent placement.
This court is mindful of the difficulties which exist in *707 respondent’s home. While there may be no evidence of neglect presently, there exist in the home some generational and cultural conflicts. These conflicts and a limited parental ability to even recognize the seriousness of respondent’s problems, let alone address those problems, are of concern to the court. Respondent’s parents have been passive, almost to the point of neglect. They neither appealed the CSE’s finding nor found an alternative school setting for their child nor have they obtained counselling for their child. They have not sought any help in dealing with their child’s problems.
Based on all of the foregoing, this court dismisses the instant proceeding in the interest of justice. It is the opinion of this court that it is appropriate for a school district to first attempt to fashion, from its many resources, a reasonable and appropriate environment for a child before commencing judicial proceedings. The court finds that it would be most unjust to adjudicate this young boy as a PINS and subject him to probable destructive placements until after the district has at least attempted, in good faith, to engage the problem.
Further this court places the respondent’s parents on notice that they must take steps to insure their child’s emotional well-being. He desperately needs counselling. Their failure to seek help for their troubled child may yet form the basis for a neglect petition against them.
Given the precarious condition of this family, the court hereby directs the Orange County Department of Social Services to forthwith provide appropriate preventive services. This court further orders the respondent and his family to cooperate with the Department of Social Services.
Accordingly the motion to dismiss is granted in the interest of justice.